Eric H. Gibbs (SBN 178658)
Andre Mura (SBN 298541)
Steve Lopez (SBN 300540)
**GIBBS LAW GROUP LLP**
505 14th Street, Suite 1110
Oakland, California 94612
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
ehg@classlawgroup.com
amm@classlawgroup.com
sal@classlawgroup.com

Scott Silver (*pro hac vice* to be submitted)
**SILVER LAW GROUP**
11780 W. Sample Road
Coral Springs, FL 33065
Telephone: (954) 755-4799
Facsimile: (954) 755-4684
ssilver@silverlaw.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BRYAN METZLER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ROBINHOOD FINANCIAL LLC, ROBINHOOD SECURITIES, LLC, and ROBINHOOD MARKETS, INC.,<br><br>Defendants. | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

**INTRODUCTION**

1. The Defendant Robinhood entities (collectively, "Robinhood") are an online brokerage firm founded in 2013 that provide users with the ability to trade stocks, funds, and options commission-free. Robinhood's customers "trade in real time" through the firm's website, app or call-in center.

2. On March 2, 2020, March 3, 2020, and March 9, 2020, Robinhood experienced total outages of its operating systems, preventing customers from making securities trades through its website, app, or call center. Consequently, customers could not place trade orders during the outages.

3. The outages occurred during the then-biggest one-day point gain in Dow history—but also during the advent of the recent stock market crash of March 2020.

4. Plaintiff Bryan Metzler and other Robinhood customers suffered financial losses because they could not execute transactions through the Robinhood trading platform during this time.

5. Plaintiff thus brings this putative class action on behalf of all persons or entities who were unable to transact with their Robinhood accounts, including (among other things) to exercise or hedge expiring options, short positions, or limit orders, during the period of March 2, 2020 through March 9, 2020, for class-wide damages and other equitable relief (among other relief).

**JURISDICTION & VENUE**

6. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(d)(2) because the aggregate claims of all proposed class members are in excess of $5 million, exclusive of interest and costs, and there are more than 100 proposed class members, many of whom are citizens of a state different from Defendants.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because Robinhood resides in this District, transacts business in this District, and its principal place of business is located in this District. Additionally, a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District. Robinhood's Terms & Conditions

also select courts located in Santa Clara County as a venue for legal disputes.

8. This Court has personal jurisdiction over Robinhood because it is headquartered in this District and conducted substantial business in this District.

### INTRADISTRICT ASSIGNMENT

9. Assignment is proper to the San Francisco or Oakland divisions of this District under Civil Local Rule 3-2(c)-(d) because a substantial part of the events or omissions which give rise to this claim occurred in San Mateo County.

### PARTIES

10. Plaintiff Bryan Metzler is a citizen and resident of Riverton, Utah.

11. Defendant Robinhood Financial LLC is a Delaware corporation with its principal place of business at 85 Willow Road, Menlo Park, California 94025. It is a wholly-owned subsidiary of Robinhood Markets. Robinhood Financial is registered as a broker-dealer with the U.S. Securities & Exchange Commission. Defendant Robinhood Financial acts as an introducing broker and has a clearing arrangement with its affiliate, Defendant Robinhood Securities.

12. Defendant Robinhood Securities, LLC is a Delaware corporation with its principal place of business at 85 Willow Road, Menlo Park, California 94025. It is a wholly owned subsidiary of Defendant Robinhood Markets. Defendant Robinhood Securities is registered as a broker-dealer with the SEC. Defendant Robinhood Securities acts as a clearing broker and clears trades introduced by its affiliate Defendant Robinhood Financial.

13. Defendant Robinhood Markets, Inc. is a Delaware corporation with its principal place of business at 85 Willow Road, Menlo Park, California 94025. Defendant Robinhood Markets is the corporate parent of Defendants Robinhood Financial and Robinhood Securities.

### FACTUAL ALLEGATIONS

14. Robinhood has grown substantially since its start in 2013. The firm raised $323 million in funding in 2019 at a $7.6 billion valuation. With its marketing geared primarily towards younger investors, Robinhood now claims over 10 million users of its trading app.

15. Robinhood markets itself as being "reliable by building our systems from the

ground up." Investors rely upon this technology to allow them to "trade in real time" as advertised by Robinhood.

16. On Monday, March 2, 2020, Robinhood's platform began experiencing technical problems, causing many users to miss out on the then-biggest one-day point gain in Dow history. Plaintiff and others customers were unable to trade the securities in their accounts for a period of over sixteen hours.

17. On Tuesday, March 3, 2020, a Robinhood spokesperson admitted that the cause of the March 2 outage was "instability in a part of our infrastructure that allows our systems to communicate with each other."

18. Robinhood's system was again offline on March 3, 2020, for approximately 3 hours.

19. Later, in a post on Robinhood's website titled "An Update from Robinhood's Founders," Robinhood's founders and co-CEOs stated that the cause of the March 3 outage was "stress on our infrastructure— which struggled with unprecedented load," caused by, among other things, "record volume" of trades.

20. The next week, on March 9, 2020, Robinhood experienced yet another major outage, with customers unable to buy or sell their securities on the public markets. This coincided with a dismal day for stocks, as the Dow Jones Industrial Average tanked 2,000 points, and the Nasdaq Composite fell 7.3%.

21. Federal and state securities laws state, securities industry rules require, and industry best practices demand, that brokerage firms with online trading services provide customers with best execution of trades, as well as adequate operational capability to handle customer trading volume.

22. In particular, the Financial Industry Regulatory Authority ("FINRA"), which governs brokers like Robinhood, requires that brokers "must make every effort to execute a marketable customer order that it receives fully and promptly."

23. Robinhood breached these obligations and caused its customers substantial losses due to its own negligence and failure to maintain adequate infrastructure when it failed

1  to respond adequately—or at all— to trading.

2  24.  This latest misconduct appears to be part of a pattern of a failure to meet such obligations to customers.

3  25.  In fact, for many years, Robinhood has promoted its ability to trade as a benefit to customers that sets it apart from the vast majority of introducing firms, which rely on third-party clearing firms to process trades. According to Robinhood Securities, its business model allows the firm to "cut more fees and made Robinhood faster and more reliable by rebuilding our systems from the ground up."

4  26.  But Robinhood has been found to be unreliable.

5  27.  For example, in December 2018, customers trading in options faced similar outages and incurred significant trading losses. After the December 2018 outage, Robinhood offered access to its premium service free for three months to affected customers.

6  28.  More recently, on December 19, 2019, FINRA announced that it had fined Robinhood $1.25 million for best-execution violations related to its customers' equity orders and related supervisory failures that spanned from October 2016 to November 2017. The settlement requires Robinhood to retain an independent consultant to review stock trading procedures and mechanisms.

7  29.  Plaintiff Metzler entered into a Customer Agreement in order to use Robinhood's online trading systems.

8  30.  Plaintiff Metzler bought put contracts through Robinhood's platform. He submitted sell orders for these contracts on Monday, March 2. However, he was unable to access the sell orders throughout the day, and the transactions were ultimately cancelled by Robinhood, forcing Plaintiff to sell his contracts at a lower price. As a result, Plaintiff Metzler earned significantly less than he would have made had the transactions not been cancelled.

9  31.  Additionally, Plaintiff Metzler had a put option order that he attempted to cancel. However, Robinhood's platform would not allow him to do so. As a result, the order became effective, causing him to incur a monetary loss on the transaction.

10  32.  Plaintiff Metzler relied on Robinhood to perform pursuant to its Customer

Agreement and provide the contracted for financial services.

33. As a result of the outages, Plaintiff suffered significant losses.

## CLASS ACTION ALLEGATIONS

34. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of himself and the following proposed class, within which the term "Outages" is defined to include Robinhood's total outages on March 2, 2020, March 3, 2020, and March 9, 2020:

> *All Robinhood customers within the United States who were not able to execute trades on securities or change limit orders during the Outages and incurred financial losses.*

35. Excluded from the proposed class are Defendants; any affiliate, parent, or subsidiary of Defendants; any entity in which any Defendant has a controlling interest; any officer, director, or employee of Defendants; any successor or assign of any Defendant; anyone employed by counsel in this action; any judge to whom this case is assigned and his or her spouse; and members of the judge's staff.

36. **Numerosity.** Robinhood has millions of customers. Although the precise number of proposed class members is presently unknown to Plaintiff, there are likely thousands of proposed class members based on publicly available news reports. Proposed class members are thus too numerous to practically join in a single action. Class members may be notified of the pendency of this action by reference to Robinhood's records, or by other alternative means.

37. **Commonality and Predominance.** Common questions of law and fact exist as to all proposed class members and predominate over questions affecting only individual class members. These common questions include:

   a. Whether Robinhood's technology was inadequate to handle reasonable consumer demand;
   b. Whether Robinhood failed to provide contingencies to customers to execute timely trades in the event of an outage;
   c. Whether Robinhood violated FINRA Rules 4370 and 5310;

5
CLASS ACTION COMPLAINT

      d.    Whether Robinhood violated state consumer protection laws in failing to disclose that its technology-based financial services were inadequate and unable to perform for substantial periods of time;

      e.    Whether Robinhood was in breach of its legal, regulatory, and licensing requirements by failing to provide adequate access to financial services in a timely manner;

      f.    Whether Robinhood was in breach of its contracts and/or the implied covenant of good faith and fair dealing in connection with its failure to provide financial services in a timely manner;

      g.    Whether Robinhood was negligent or grossly negligent by failing to provide financial services in a timely manner due to its substandard and inadequate technology platform;

      h.    Whether Robinhood breached its fiduciary duties to customers by failing to provide adequate access to financial services in a timely manner;

      i.    Whether Robinhood was unjustly enriched by its conduct; and

      j.    Whether Plaintiff and the other proposed class members were injured by Robinhood's conduct, and if so, the appropriate class-wide measure of damages, restitution, and other appropriate relief, including injunctive relief.

38.    **Typicality.** Plaintiff's claims are typical of those of the claims of the proposed class because Plaintiff and proposed class members all sustained damages from the Defendants' wrongful conduct in a substantially identical manner, giving rise to substantially the same claims.

39.    **Adequacy.** Plaintiff is an adequate representative of the proposed class because his interests do not conflict with the interests of the members of the class he proposes to represent.  Plaintiff has retained counsel experienced in class action securities litigation, and who will prosecute this action vigorously on class members' behalf..

40.    **Superiority.** A class action is superior to other available means for the fair and

efficient adjudication of this dispute.  The injury suffered by each class member, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual actions against Robinhood economically feasible.  Even if class members themselves could afford such individualized litigation, the court system could not.  In addition to the burden and expense of managing many actions arising from the defect, individualized litigation presents a potential for inconsistent or contradictory judgments.  Individualized litigation increases the delay and expense to all parties and the court system presented by the legal and factual issues of the case.  By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

41. Additionally, the proposed class may be certified because:

    a. The prosecution of separate actions by the individual members of the proposed class would create a risk of inconsistent adjudications, which could establish incompatible standards of conduct for Robinhood;

    b. The prosecution of individual actions could result in adjudications, which as a practical matter, would be dispositive of the interests of nonparty class members or which would substantially impair their ability to protect their interests; and

    c. Robinhood has acted or refused to act on grounds generally applicable to the proposed class, thereby making appropriate final and injunctive relief with respect to members of the proposed class as a whole.

## FIRST CAUSE OF ACTION

### Breach of Contract

42. Plaintiff incorporates the above allegations by reference.

43. As set forth above, Plaintiff and proposed class members entered into binding and enforceable contracts with Robinhood.

44. Plaintiff and proposed class members gave consideration that was fair and reasonable, and performed all conditions, covenants, and promises required under their

agreements with Robinhood.

45. Robinhood materially breached the terms of these contracts with Plaintiff and proposed class members by, among other things:

    a. Failing to disclose that its financial services platform was not adequately built or maintained such that it could not reliably provide financial services;

    b. Failing to provide financial services during the outages because it lacked infrastructure and systems to ensure that it could perform pursuant to its contracts with Plaintiff and proposed class members;

    c. Failing to provide an alternate means for customers to place timely trades in the event its platform was not reliably providing financial services;

    d. Failing to execute trades and other requested customer actions promptly and fully (as also required by FINRA Rule 5310); and

    e. Failing to comply with all applicable legal, regulatory, and licensing requirements.

46. As a result of Robinhood's breach of contract, Plaintiff and proposed class members suffered actual damages and did not receive the full benefit of their bargain.

47. Accordingly, Plaintiff and proposed class members are entitled to damages and/or restitution in an amount to be proven at trial.

**SECOND CAUSE OF ACTION**

**Breach of the Implied Covenant of Good Faith and Fair Dealing**

48. Plaintiff incorporates the above allegations by reference.

49. As set forth above, Plaintiff and proposed class members entered into binding and enforceable contracts with Robinhood.

50. Under common law, a covenant of good faith and fair dealing is implied into every contract requiring all parties to act in good faith, make reasonable efforts to perform their contractual obligations (both explicit and fairly implied), and not impair the rights of the other parties to receive their rights, benefits, and reasonable expectations under the contract.

51. Robinhood violated the covenant of good faith and fair dealing implied in its contracts with Plaintiff and proposed class members by:

    a. Failing to disclose that its financial services platform was not adequately built or maintained such that it could not reliably provide financial services;

    b. Failing to provide financial services during the outages because it lacked infrastructure and systems to ensure that it could perform pursuant to its contracts with Plaintiff and proposed class members;

    c. Failing to provide an alternate means for customers to place timely trades in the event its platform was not reliably providing financial services;

    d. Failing to execute trades and other requested customer actions promptly and fully (as also required by FINRA Rule 5310); and

    e. Failing to comply with all applicable legal, regulatory, and licensing requirements.

52. Plaintiff and proposed class members gave consideration that was fair and reasonable, and performed all conditions, covenants, and promises required under their agreements with Robinhood.

53. As a result of Robinhood's breach of the implied covenant of good faith and fair dealing, Plaintiff and proposed class members are entitled to damages and/or restitution in an amount to be proven at trial.

## THIRD CAUSE OF ACTION
### Breach of Fiduciary Duty

54. Plaintiff incorporates the above allegations by reference.

55. As a licensed provider of financial services, Robinhood at all times relevant herein was a fiduciary to Plaintiff and proposed class members and owed them the highest good faith and integrity in performing its financial services on their behalf.

56. Robinhood breached its fiduciary duties to Plaintiff and proposed class members by:

      a.    Failing to disclose that its financial services platform was not adequately built or maintained such that it could not reliably provide financial services;

      b.    Failing to provide financial services during the outages because it lacked infrastructure and systems to ensure that it could perform pursuant to its contracts with Plaintiff and proposed class members;

      c.    Failing to provide an alternate means for customers to place timely trades in the event its platform was not reliably providing financial services;

      d.    Failing to execute trades and other requested customer actions promptly and fully (as also required by FINRA Rule 5310); and

      e.    Failing to comply with all applicable legal, regulatory, and licensing requirements.

57.    Robinhood's conduct has caused Plaintiff and proposed class members harm, losses, and damages and continues to expose them to harm because Robinhood continues to breach its fiduciary duties. These losses reflect damages to Plaintiff and proposed class members in an amount to be determined at trial or separate proceedings as necessary.

## FOURTH CAUSE OF ACTION

### Negligence

58.    Plaintiff incorporates the above allegations by reference.

59.    Robinhood owed Plaintiff and proposed class members a duty to exercise reasonable care in executing trades and other requested customer actions in a full and prompt manner.

60.    Robinhood breached this duty by:

      a.    Failing to disclose that its financial services platform was not adequately built or maintained such that it could not reliably provide financial services;

      b.    Failing to provide financial services during the outages because it lacked infrastructure and systems to ensure that it could perform pursuant to its

contracts with Plaintiff and proposed class members;

  c. Failing to provide an alternate means for customers to place timely trades in the event its platform was not reliably providing financial services;

  d. Failing to execute trades and other requested customer actions promptly and fully (as also required by FINRA Rule 5310); and

  e. Failing to comply with all applicable legal, regulatory, and licensing requirements.

61. As a direct, reasonably foreseeable, and proximate result of Robinhood's failure to exercise reasonable care, Plaintiff and proposed class members have suffered damages that they could not have prevented through the exercise of reasonable diligence.

62. Plaintiff and proposed class members seek monetary damages for these harms and other recovery as allowed by law.

## FIFTH CAUSE OF ACTION

### Gross Negligence

63. Plaintiff incorporates the above allegations by reference.

64. Robinhood owed Plaintiff and proposed class members a duty to exercise reasonable care in executing trades and other requested customer actions in a complete and timely manner.

65. Robinhood breached this duty by:

  a. Failing to disclose that its financial services platform was not adequately built or maintained such that it could not reliably provide financial services;

  b. Failing to provide financial services during the outages because it lacked infrastructure and systems to ensure that it could perform pursuant to its contracts with Plaintiff and proposed class members;

  c. Failing to provide an alternate means for customers to place timely trades in the event its platform was not reliably providing financial services;

  d. Failing to execute trades and other requested customer actions promptly

and fully (as also required by FINRA Rule 5310); and

e.  Failing to comply with all applicable legal, regulatory, and licensing requirements.

66. Robinhood's breaches of its duties of care to Plaintiff and proposed class members constitutes gross negligence because it constitutes an extreme departure from what a reasonably careful entity in the same situation would do to prevent foreseeable harm to Plaintiff and proposed class members.  Robinhood acted willfully, wantonly, and with conscious and reckless disregard for the rights and interests of Plaintiff and proposed class members.  Its acts and omissions had a great probability of causing considerable harm, and in fact did.

67. As a direct, reasonably foreseeable, and proximate result of Robinhood's failure to exercise reasonable care, Plaintiff and proposed class members have suffered damages that they could not have prevented through the exercise of reasonable diligence.

68. Plaintiff and proposed class members seek monetary damages for these harms, including punitive damages, and other recovery as allowed by law.

## SIXTH CAUSE OF ACTION

### Violation of California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.*

69. Plaintiff incorporates the above allegations by reference.

70. Robinhood is a "person" within the meaning of Civil Code §§ 1761 and 1770, and it has provided "goods" or "services" within the meaning of Civil Code §§ 1761 and 1770.

71. Plaintiff and members of the proposed class are "consumers" within the meaning of Civil Code §§ 1761 and 1770, and have engaged in a "transaction" within the meaning of Civil Code §§ 1761 and 1770.

72. Robinhood's acts and practices in connection with its deficient financial services violate § 1770 of the Consumers Legal Remedies Act for at least the following reasons:

a.  Robinhood represents that its goods or services have characteristics, uses, or benefits that they do not have;

      b.    Robinhood advertises its goods or services with intent not to sell them as advertised;

      c.    Robinhood represents that its goods or services are of a particular standard, quality, or grade when they are not;

      d.    Robinhood represents that a transaction conferred or involved rights, remedies, or obligations which they do not; and

      e.    Robinhood represents that its goods or services have been supplied in accordance with a previous representation when they have not.

73. As described above, Robinhood knowingly concealed and failed to disclose that its platform was not adequately built or maintained to handle reasonable consumer demand such that it failed to execute trades and other actions requested by customers in a full and prompt manner. As Robinhood knew, had it disclosed these facts, Plaintiff, proposed class members, and reasonable consumers would not have used Robinhood's services, and thus Robinhood concealed these facts with the intent to profit from its nondisclosure.

74. Had Robinhood not concealed and instead adequately disclosed these issues, Plaintiff, members of the proposed class, and reasonable consumers would not have purchased or would have paid less for Robinhood's financial services.

75. Pursuant to the provisions of Cal. Civ. Code § 1782(a), Plaintiff will send a notice letter to Robinhood to provide it with the opportunity to correct its business practices. Should Robinhood decline to reform its conduct in response to the demand and this complaint, Plaintiff will amend this complaint to add a demand for damages.

76. Pursuant to Cal. Civ. Code § 1780, Plaintiff seeks an order enjoining Robinhood from the unlawful practices described above, a declaration that Robinhood's conduct violates the Consumers Legal Remedies Act, and reasonable attorney's fees and costs of litigation.

## SEVENTH CAUSE OF ACTION

**Violation of California's Unfair Competition Law,**

**Cal. Bus. & Prof. Code §§ 17200,** *et seq.*

77. Plaintiff incorporates the above allegations by reference.

78.     Robinhood has violated and continues to violate California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*, which prohibits unlawful, unfair, and fraudulent business acts or practices.

79.     Robinhood's acts and practices, as alleged in this complaint, constitute unlawful, unfair, and fraudulent business practices under the Unfair Competition Law.  In particular, Robinhood knowingly failed to disclose that its platform was not adequately built or maintained to handle reasonable consumer demand, failed to provide an alternative means for customers to execute trades, and failed to execute trades and other actions requested by customers in a full and prompt manner.

80.     Robinhood's business acts and practices are unlawful in that they violate the Consumers Legal Remedies Act, Cal. Civil Code § 1750, *et seq.* and FINRA Rule 5310 (which requires execution of orders fully and promptly).

81.     Robinhood's acts and practices also constitute fraudulent practices in that they are likely to deceive a reasonable consumer.  As described above, Robinhood knowingly concealed and failed to disclose that its platform was not adequately built or maintained to handle reasonable consumer demand such that it failed to exercise trades and other actions requested by customers in a complete and timely manner.  As Robinhood knew, had it disclosed these facts, Plaintiff, proposed class members, and reasonable consumers would not have used Robinhood's services, and thus Robinhood concealed these facts with the intent to profit from its nondisclosure.

82.     Robinhood's conduct also constitutes an unfair practice within the meaning of the Unfair Competition Law because:

        a.     The gravity of harm to Plaintiff and proposed class members from Robinhood's acts and practices far outweighs any legitimate utility of that conduct;

        b.     Robinhood's conduct is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiff and members of the proposed class; and

  c. Robinhood's conduct undermines or violates the stated policies underlying the Consumers Legal Remedies Act, FINRA regulations, and established public policies intended to regulate the fair and ethical sale of goods and services, including protecting consumers against unfair and sharp business practices and promoting a basic level of honesty and reliability in the marketplace.

83. As a direct and proximate result of Robinhood's business practices, Plaintiff and proposed class members suffered injury in fact and lost money or property.

84. Plaintiff and proposed class members are entitled to restitution, injunctive relief, and reasonable attorney's fees and costs.

## EIGHTH CAUSE OF ACTION

### Unjust Enrichment

85. Plaintiff incorporates the above allegations by reference.

86. Robinhood has obtained unjust benefits from Plaintiff and proposed class members resulting in inequity.

87. Robinhood engaged in unfair, fraudulent, and unjust conduct, including:

  a. Failing to disclose that its financial services platform was not adequately built or maintained such that it could not reliably provide financial services;

  b. Failing to provide financial services during the outages because it lacked infrastructure and systems to ensure that it could perform pursuant to its contracts with Plaintiff and proposed class members;

  c. Failing to provide an alternate means for customers to place timely trades in the event its platform was not reliably providing financial services;

  d. Failing to execute trades and other requested customer actions promptly and fully (as also required by FINRA Rule 5310); and

  e. Failing to comply with all applicable legal, regulatory, and licensing requirements.

88. By its deceptive, misleading, and improper conduct alleged above, Robinhood obtained money from and was unjustly enriched at the expense of Plaintiff and proposed class members.

89. It would be inequitable and unconscionable for Robinhood to retain the profits, benefits, and other compensation obtained through its deceptive, misleading, and improper conduct.

90. Plaintiff and proposed class members are entitled to restitution or disgorgement of, or the imposition of a construction trust upon, all profits, benefits and other compensation obtained by Robinhood through its deceptive, misleading, and improper conduct.

**PRAYER FOR RELIEF**

Plaintiff requests that the Court enter a judgment awarding the following relief:

a. An order certifying the proposed class and appointing Plaintiff's counsel to represent the class;

b. An order awarding Plaintiff and proposed class members their actual damages, punitive damages, and any other form of monetary relief provided by law, except that no monetary relief is presently sought for violations of the Consumers Legal Remedies Act;

c. An order awarding Plaintiff and proposed class members restitution, disgorgement, or other equitable relief as the Court deems proper, except that no monetary restitution is presently sought for violations of the Consumers Legal Remedies Act;

d. An order awarding Plaintiff and proposed class members pre-judgment and post-judgment interest as allowed under the law;

e. An order awarding Plaintiff and proposed class members reasonable attorney's fees and costs of suit, including expert witness fees; and

f. An order awarding such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff hereby demands a trial by jury for all issues so triable under the law.

DATED: April 3, 2020

Respectfully submitted,

**GIBBS LAW GROUP LLP**

By:    */s/ Eric H. Gibbs*

Eric H. Gibbs
Andre Mura
Steve Lopez
**GIBBS LAW GROUP LLP**
505 14th Street, Suite 1110
Oakland, California 94612
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
ehg@classlawgroup.com
amm@classlawgroup.com
sal@classlawgroup.com

Scott Silver (*pro hac vice* to be submitted)
**SILVER LAW GROUP**
11780 W. Sample Road
Coral Springs, FL 33065
Telephone: (954) 755-4799
Facsimile: (954) 755-4684
ssilver@silverlaw.com

*Attorneys for Plaintiff*